J. P. STOVER et al., Appellants, v. THE CITY OF SPRINGFIELD et al., Respondents.

Springfield Court of Appeals, December 2, 1912.

1. **MUNICIPAL CORPORATIONS: Special Taxbills: Sewer Construction: Engineer's Estimate: Estimate on Items Controlling over Totals.** In an action to cancel certain special taxbills issued for the construction of a district sewer in a city of the third class, the plaintiffs contended that the contract price exceeded the estimate of the engineer and it appeared that the total cost of the work was in excess of the total estimated cost, but the contract price per foot for the different items of excavating rock, dirt, etc., was below the engineer's estimate on each of these items. *Held*, that it would be impossible for the engineer to estimate how much rock would be encountered in excavating the ditch and that the contractor should recover for the work actually done where the contract price on the items was less than the estimated cost of such items and that, under the circumstances, the estimate of the total cost should not control over the items.

2. ———: ———: ———: ———: **Making Changes from Original Contract.** In an action to cancel special taxbills issued for the construction of a district sewer, it appeared that certain changes were made after the contract was let by shortening one of the ditches called for in the contract and by adding laterals in other places not called for in the contract and that the total length of the ditches dug and pipes laid was greater than that stated in the engineer's preliminary estimate. *Held*, that under the evidence it appeared that these changes were necessary to properly accommodate the district and that since the basis of the contract was the items of work, it was proper to make such changes and the same were not fatal to the validity of the contract.

3. ———: ———: ———: ———: **Changing Grade.** Where the property owners were benefited by the change in the grade of a district sewer, rather than injured and since such changes lessened the amount of the contract, it was not fatal to the validity of the special taxbills issued in payment thereof.

4. ———: ———: ———: **Evidence: Omitting Territory in Estimate: Harmless Error.** In an action to cancel certain taxbills issued for the construction of a district sewer, testimony, tending to show that a certain lot lying within the district had been omitted in computing the area of the district, was compe-

tent and should have been admitted; but where it also appeared that other territory not lying in the district had been included in computing the area and that the area as computed was not less than the actual area and the charge against the plaintiffs' property was not thereby increased, plaintiffs were not injured by this omission and cannot complain.

5. ———: ———: ———: ———: **Excluding Testimony: Harmless Error.** In an action to cancel taxbills that had been issued in payment for the construction of a district sewer, evidence was offered to prove that parties had made excavations of the ditch at certain points and that the side walls of the ditch at these points showed but a small portion of flint excavated; one of plaintiffs' contentions being that there was an overcharge for flint excavation. *Held*, that this evidence was competent and should have been admitted but there was no offer to show that the same formation was present in other parts of the ditch and the amount of the ditch reopened was so small as compared with the entire ditch that to reverse this judgment on account of the error in excluding the testimony would not be justified.

6. ———: ———: ———: **Contracts: Constuction: Construction of Parties.** In an action to cancel special taxbills issued for the construction of a district sewer, a close question is presented in the construction of the contract, as to whether or not a double charge had been made by the contractor for excavating the rock; but under the oral testimony which was *held* competent, it appeared that the practice had been in vogue for years in the city to allow the stipulated price per lineal foot for rock excavation in addition to the amount which would have been charged for the dirt excavation had it extended to the bottom of the ditch and this was the construction of the contract made by the city engineer. *Held*, that the trial court was right in making the computation upon that basis.

7. **CONTRACTS: Construction: Construction of Parties: Evidence: Admitting Oral Evidence.** It is a well-settled rule of construction of contracts that the entire contract, including all its provisions, must be construed together and when this is done, if its terms are clear and unequivocal, then it is the duty of the court to declare as a matter of law what the contract means and give it its proper construction; but if it is not clear, then oral testimony may be resorted to, to show the condition of the matter about which the contract is made, and if there has been a construction placed upon it by the parties themselves it may be used to aid in determining what the parties really meant by the language used in the contract to be construed.

8. ———: ———: **Completed Contract.** After a contract has been executed and the work honestly performed and the ques-

tion arises in the court as to what recompense the contractor may recover, a reasonable and common sense rule should be applied in construing the contract, with the end in view of trying to ascertain in a fair and just manner what the parties really meant when the contract was executed.

9. **JUDGMENTS: Special Taxbills: Penalty: Interest After Judgment.** Where the court gave a judgment on special taxbills issued for the construction of a district sewer, it was right in computing the interest on such bills at 15 per cent to the date of the judgment as provided by the statutes but the judgment itself should bear interest at only 6 per cent from the date of its rendition.

Appeal from Greene Circuit Court.—*Hon. James T. Neville*, Judge.

AFFIRMED.

*Henry C. Young* for appellants.

(1) The false statements contained in the city engineer's report to the council, by which excessive charges for flint ledge, lime rock and earth excavation were sought to be created against the property of appellants, and by which it was made to appear that the work of constructing the sewer had been completed in accordance with the contract, plans and specifications, having been made with the intention of securing the issuance of the taxbills for the full amount of $4292.35 named therein, and so made by the engineer with full knowledge on the part of the defendants Plummer & Callis, of their material falsity, constitute such fraud as to render the taxbills void.  Derby v. Donahue, 208 Mo. 684; Mill Co. v. Sugg, 206 Mo. 155; White v. Reitz, 129 Mo. App. 313; Ernst v. City, 145 Mo. App. 89; Baird v. Grannis, 208 Mo. 426; Brokerage Co. v. Gates, 190 Mo. 391; Hamlin v. Abell, 120 Mo. 203; Bishop v. Seal, 87 Mo. App. 261; Lovelance v. Suter, 93 Mo. App. 429; Chism v. Schipper, 2 L. R. A. (N. S.) 544; Edwards v. Hartshorn, 1 L. R. A. (N. S.) 1050; State ex rel. v. Cartwright, 122 Mo. App. 267.   (2)   And the rule obtains,

whether such statements were made with knowledge of their falsity or whether though not known to be true, they were wilfully made as true for the purpose of securing the issuance of the taxbills by the city. Derby v. Donahue, 208 Mo. 684; Baird v. Grannis, 208 Mo. 426; Bishop v. Seal, 87 Mo. App. 261. (3) That since the interest charge designated by the statute has been construed to be a penalty and not interest, the appellants should not be penalized for asserting their rights in a court of equity by the imposition of a charge of 15 per cent. per annum upon the amount of their respective taxbills. Asphalt Co. v. Field, 134 Mo. App. 669; St. Joseph v. Forsee, 110 Mo. App. 242; St. Louis v. Allen, 53 Mo. 57; Bank v. Woesten, 176 Mo. 60; Tipton v. Norman, 72 Mo. 380; Eyerman v. Blakesley, 78 Mo. 145; Joplin v. Freeman, 125 Mo. App. 724; Paving Co. v. Peck, 186 Mo. 519. (4) Since it is impossible to separate with even approximate accuracy the illegal overcharges from the taxbills, the whole assessment is necessarily illegal and void. Hoag v. Ward, 186 Mo. 325; Hallett v. Bond Co., 90 Pac. (Colo.) 683; Park-Davis Co. v. Mullet, 245 Mo. 168, 149 S. W. 461. (5) The notice to contractors was insufficient in form and substance to secure intelligent, competitive bidding. Morley v. Weakley, 86 Mo. 356; Owens v. City of Monroe, 103 N. W. 381; Arnold v. Ft. Dodge, 82 N. W. 550; Jenney v. Des Moines, 72 N. W. 550; Healey v. Bank, 90 Pac. 54; Springfield v. Schmook, 120 Mo. App. 46; Excelsior Springs v. Ettenson, 120 Mo. App. 224; State v. Walbridge, 119 Mo. 393. (6) The ordinances under which the taxbills in controversy were issued fail to specify the dimensions and material of the sewer, and attempt to delegate to the city engineer powers which are not capable of such delegation, and it is shown upon the face of Ordinance No. 4058 that the plans under which the work was ordered to be constructed were not then in existence, or, if in existence, not known to or

approved by the council and no such plans, profiles or specifications were adopted or attempted to be adopted prior to the enactment of Ordinance No. 4347. Dickey v. Orr, 132 Mo. App. 416; Asphalt Co. v. O'Brien, 128 Mo. App. 267; City of Independence v. Knoepper, 134 Mo. App. 606; Dickey v. Holmes, 109 Mo. App. 721; McCormack v. Moore, 134 Mo. App. 679; Dickey v. Porter, 203 Mo. 135; Whitworth v. Webb City, 204 Mo. 596; Curtice v. Schmidt, 202 Mo. 703; Const. Co. v. Coal Co., 205 Mo. 54; Securities Co. v. Gates, 130 Mo. App. 552; Ramsey v. Field, 155 Mo. App. 620; Joplin v. Hollingshead, 123 Mo. App. 607; Sedalia to use v. Donohue, 190 Mo. 407; Paving Co. v. Field, 188 Mo. 182; Barton v. Kansas City, 110 Mo. App. 31; Allen v. Labslip, 188 Mo. 692; Hagg v. Ward, 186 Mo. 325; Paving Co. v. Peck, 186 Mo. 506; City of Kirksville v. Coleman, 103 Mo. App. 215; Swift v. St. Louis, 180 Mo. 80; Akers v. Kalkmeyer, 97 Mo. App. 520; Kansas City v. Askew, 105 Mo. App. 84; Wheeler v. City of Poplar Bluff, 149 Mo. 36; Sheehan v. Gleason, 46 Mo. 100; Moran v. Lindell, 52 Mo. 229; St. Louis v. Clemens, 43 Mo. 395; Eyerman v. Blakesley, 78 Mo. 151; Ruggles v. Collier, 43 Mo. 353; Manufacturing Co. v. Schell City, 21 Mo. App. 175; City of Poplar Bluff v. Hoag, 62 Mo. App. 672; Graham v. Carondelet, 33 Mo. 262; Holmes v. Carondelt, 38 Mo. 262; Becker v. City, 94 Mo. 375; Keane v. Klausman, 21 Mo. App. 185; Neill v. Gates, 152 Mo. 594; Kansas City v. Bacon, 147 Mo. 299; Reid v. Mexico, 101 Mo. App. 155; City v. Martin, 95 Mo. App. 36.    (8)   The failure of the contractor to comply with the alleged contract in the material particulars set forth in the petition, and especially his failure to lay the sewer to the grade shown by the original profile and his departure from the terms of the contract in abandoning a part of the sewer route provided for by the ordinance and in building sewers not provided for renders the taxbills void.   Paving Co.

v. Munn, 185 Mo. 576; City of Boonville v. Stephens, 95 S. W. 314; City of Trenton v. Collier, 68 Mo. App. 492; Galbraith v. Newton, 30 Mo. App. 392; Warren v. Street Commissioners, 181 Mass. 6; Wilson v. St. Joseph, 125 Mo. App. 460; Burke v. Kansas City, 34 Mo. App. 570; Bonesteel v. Mayor, 22 N. Y. 162. (9) It has been determined by the courts of this State that the lumping estimate of cost made by the city engineer or the total cost of the sewer is the proper and only estimate contemplated by statute. Gratz v. City of Kirkwood, 165 Mo. App. 196, 145 S. W. 874; Gregory v. Kansas City, 244 Mo. 523, 149 S. W. 472.

*Barbour & McDavid* for respondents.

(1) Under the charter and ordinances and the specifications and contract the measurements and classification of the engineer and the acceptance of the work by the engineer and sewer committee are, in the absence of fraud, final and conclusive on the council (and we think on the property owners and the courts), and the defendant contractor was entitled to have taxbills issued to him in accordance with the report of the engineer. Rogers v. Rehard, 122 Mo. App. 44; Board of Education v. Surety Co., 183 Mo. 182; McGregor v. Construction Co., 188 Mo. 622; McCormick v. St. Louis, 166 Mo. 326; Williams v. Railway, 112 Mo. 487; Whitworth v. Webb City, 204 Mo. 599; Reilley v. City of Albany, 112 N. Y. 32; Joplin v. Freeman, 125 Mo. App. 722. (2) Property owners cannot stand by and see work done and receive the benefits of the improvements, and then for the first time come into a court of equity and have cancelled the taxbills issued under valid proceedings for mere irregularities which do not affect their substantial rights. Wash v. Bank, 139 Mo. App. 641; Sheehan v. Owen, 82 Mo. 465; Warren v. Paving Co., 115 Mo. 580; Hilgert v. Paving Co., 107 Mo. App. 400; Jaicks v. Merrill, 201 Mo. 108; Herman v.

Ring, 85 Mo. App. 235; Johnson v. Duer, 115 Mo. 381; Planet Co. v. Railway, 115 Mo. 620; Huling v. Stone Co., 87 Mo. App. 360; McCoy v. Randall, 222 Mo. 40; Railway v. Gracy, 126 Mo. 484; Treat v. Chicago, 130 Fed. 443.   (3)   In this case the evidence conclusively shows that all the proceedings were regular and that the work was done in substantial compliance with those proceedings and the court has so found in its judgment rendered in the case.   State v. Flad, 26 Mo. App. 503; Dickhaus v. Olderheide, 22 Mo. App. 79; Johnson v. Duer, 115 Mo. 366; Porter v. Paving Co., 214 Mo. 1; Treat v. Chicago, 130 Fed. 444.  (4) The fact that some of the lands within the sewer district may not have been included in the apportionment and assessment of the cost of the sewer; or, that improper or' excessive amounts may be included therein, does not invalidate the taxbills.   On a proper showing, the courts will correct all such errors and enforce the taxbills for the corrected amount with interest.   Walsh v. Bank, 139 Mo. App. 641; Creamer v. McCune, 7 Mo. App. 96; Neenan v. Smith, 60 Mo. 292; Bank v. Arnoldia, 63 Mo. 229; Weber v. Schergens, 28 Mo. App. 587; Johnson v. Duer, 115 Mo. 366; St. Joseph v. Dillon, 61 Mo. App. 317; Joplin v. Freeman, 125 Mo. App. 717; Johnson v. Quest, 58 Mo. App. 54; St. Joseph v. Wilshire, 47 Mo. App. 125; Neil v. Ridge, 220 Mo. 233; Perkinson v. Schnaake, 108 Mo. App. 255; Farrar v. St. Louis, 80 Mo. 379; Dickey v. Porter, 203 Mo. 596.

COX, J.—Action by certain property owners to cancel special taxbills issued to defendant Plummer as contractor in payment for the construction of a district sewer in the city of Springfield.  The defendants in their answer alleged compliance with the law and ordinances of the city and asked for a foreclosure of the lien of the taxbills issued against the property of the plaintiffs.  The trial court found for the defendants except that he reduced the amount of each bill

ten per cent and then ordered foreclosure for the re-
mainder of the taxbills.   Plaintiffs have appealed.

The questions upon which plaintiffs rely for a re-
versal of the judgment are:

First:   That the contract for putting in the sewer
was let at a price in excess of the preliminary estimate
of the city engineer.

Second:   That material changes were made in the
construction of the sewer after the contract was let,
by the addition of laterals not called for in the contract
and by omitting other parts that were called for in the
contract.

Third:   That there was a change of grade after the
contract was made.

Fourth:   That there was a double charge for exca-
vating by charging for both dirt and rock in the same
part of the ditch.

Fifth:   That the court erred in excluding certain
testimony offered by the plaintiffs.

As to the first point, we do not think the conten-
tion is sustained by the testimony.   The estimate of the
engineer itemized the work and the cost.   He estimated
that it would require 1705 lineal feet of eight inch pipe
including Ys, branches and joints, two lamp holes, two
flush tanks, four manholes, etc.   The excavation was
classified and a separate estimate put upon all exca-
vations including back filling; six feet and under eight
feet being in one class; eight feet and under ten feet in
another; ten feet and under twelve feet in another;
twelve feet and under fourteen feet in another; four-
teen feet and under sixteen feet in another; sixteen feet
and under eighteen feet in another; and on each of these
a separate estimate was made.   There was an estimate
of 2800 lineal feet for a rock trench and 3400 lineal
feet of flint excavation.   These with some other items
all of which were specified made a total of $3189.15.
The contract also specified same items and was at a
less price for each item than the estimate of the engi-

neer. There was also a provision in the contract that extra work should be done according to the engineer's estimate and if this made an increase in the amount of work, it should be paid for according to the quantity actually done and at the price stipulated in the contract.

The basis for the contention that the contract price exceeded the estimate of the engineer is not based upon the fact that the contract was let at a higher price on any item of the contract but is based upon the fact that after the work was completed and the work actually done was computed that by the addition of laterals, the length of the ditch was increased and also that the amount of flint excavation was increased over the estimate; and that being true, the total cost, instead of being as estimated $3189.15, amounted to $4247.35.

In the very nature of things it was impossible for the engineer to ascertain before the ditch was actually dug how much flint and how much rock would be encountered in excavating the ditch, and for that reason, the parties could not understand that his estimate as to the total cost should control over the estimate as per the items making up the total expenditure and as the contract was let at a price below the estimate on each item and, all the items going to make up the total having been specified, it would certainly be unreasonable to hold that because the engineer underestimated the amount of rock and flint to be found under the ground that the contractor could not recover for the work actually done. We are cited by appellants' counsel to the case of Gratz v. City of Kirkwood, 165 Mo. App. 196, 145 S. W. 874, decided by the St. Louis Court of Appeals as authority for the position that the contract or the total amount of the taxbills could not exceed the estimate of the engineer as to the total cost of the construction of the sewer, but a careful examination of that case will show that instead of being an authority for that position, it is authority for the position that the

estimate of the total cost does not control over the items when the items are specified and our holding in this case that the evidence does not show the contract to be in excess of the estimate is in harmony with the Gratz case.

The second contention is that material changes were made after the contract was let, by shortening one of the ditches called for in the contract and by adding laterals at other places not called for in the contract. The evidence shows that this was done and that by doing so, the total length of the ditches dug and pipes laid was greater than that stated in the engineer's preliminary estimate. But we do not think under the evidence in this case that these changes were fatal to the validity of the taxbills. It is the duty of the city in constructing any district sewer to place it in such a way that it will accommodate the property owners of the district. In this case, an abstract of title was procured for the purpose of determining who the owners were and size of the lots and their location in order that the sewer might be so placed as to meet the demand for service from all the lots. It developed that some mistakes had been made in the abstracts and that when they went to do the work it became necessary to add some laterals in order to reach some parts of the district and it also was found unnecessary to dig one of the ditches the full length estimated by the engineer. The addition of the laterals was necessary in order to furnish proper drainage for the entire district and one ditch was shortened because it was found to be unnecessary to dig it as long as estimated and since the basis of this contract was the items of work, we think it was entirely right and proper for these changes to have been made and was in fact the duty of the city to make them so that the district could be properly accommodated and without unnecessary cost.

It also appears that there were some changes in the grade of the main pipe and it is now contended that this vitiated the contract and taxbills. The evidence shows that this change lessened the cost without in any way impairing the service to be rendered the residents. These property owners, therefore, were benefited by the change rather than injured and since it did not increase but lessened the amount of the contract, it was not fatal and they cannot complain.

It is next contended that plaintiffs offered to show that one lot about 50 by 100 feet lying within the district had been omitted in computing the area of the district and that by reason thereof, the cost to these plaintiffs had been increased to that extent. When this offer was made the court excluded it upon objection of defendant. Afterward, however, the same testimony was admitted without objection and it was further shown that certain other territory not lying in the district was included in computing the area so that the area as computed was not less than the actual area and the charge against the plaintiffs' property was not thereby increased. The testimony was competent and should have been admitted but since it is shown that the area of the district as computed by the engineer was not less than the actual area, plaintiffs were not injured by this omission and cannot now complain.

Plaintiffs also offered to prove that since the trial had begun, parties had made excavations of the ditch at certain points and that at the points at which these excavations were made, the side walls of the ditch showed that there was at these points but a small proportion of flint excavation. This testimony was excluded. We think the exclusion of this testimony was error. It ought to have been admitted and have gone to the jury or the court sitting as a jury for what it was worth. But if this testimony had been admitted, the trier of the facts might still have found that there was no mistake in the totals returned as flint excavation for

there was no offer to show that the same formation was present in other parts of the ditch and the amount of the ditch reopened was so small as compared with the entire ditch that to reverse this judgment on account of this error would not be justified because the change that would have been made by this testimony, had it been admitted, would have been so small as to have been unworthy the serious consideration of this court.

As to the contention that there was a double charge for both dirt and rock on that portion of the ditch in which rock was found a very close question is presented which rests largely upon a construction of the contract itself. The items for excavating as stated in the contract run in the following form: "The price per lineal foot for all excavation and back filling: six feet or over and under eight feet, $.30; . . . eight feet or over and under ten feet, $.25; . . . ten feet or over and under twelve feet, $.40; . . . twelve feet or over and under fourteen feet, $.45; . . . sixteen feet or over and under eighteen feet, $.60; price per lineal foot for rock trench per foot in depth, $.25." The testimony showed that in sewer contracts similar to this it had been the uniform practice for years in counting the cost of excavation to count it at the price mentioned the entire depth of the ditch and then if there was rock in the ditch to add that to it and that was done in this case and one of the items making up the total charges in this case is 1000 lineal feet of rock trench at $.25 per lineal foot, $250. The evidence also showed that rock was found at the bottom of the ditch but at what sections, or how deep the excavations were at places where the rock was found, does not appear, but in any event the most shallow excavation anywhere was in the class of six feet or over and under eight feet, and for that class $.30 per lineal foot was charged so that if in that section the dirt was five feet thick and then one foot of rock was to be excavated below the dirt and we should compute the five feet of dirt at the dirt price, we would

find that the contractor was excavating dirt five feet deep at $.30 per lineal foot and then taking out rock below this dirt at $.25 a lineal foot. If the rock were found in the bottom of the ditch that was sixteen feet deep we would find the contractor getting $.60 a lineal foot for excavating dirt to the depth of fifteen feet, and then only $.25 a foot for excavating rock below that depth. So it is easy to see from a consideration of these items that it was not the intention of the parties to charge less for excavating rock at the bottom of the ditch than for excavating dirt near the top of the ditch. If this were all there were in the contract on this question, it would seem clear that the parties intended that the general excavation which varied in parts according to the depth of the ditch should extend to the bottom of the ditch and if rock was encountered, the price per lineal foot for rock of $.25 should be added to the general price for excavating. There is, however, the following provision in the contract: "Only such ledge rock, limestone as requires blasting for removal shall be estimated as rock excavation and will be paid for by the lineal foot, *depth of earth excavation to cease where rock excavation begins.* Well-defined ledges of flint will be paid for at one-half the price of rock excavation." (The italics are ours.) The words "depth of earth excavation to cease where rock excavation begins" are held by appellants to preclude any construction of the contract which would allow the extra price for rock of $.25 to be added to the general price which is gauged according to the depth of the ditch. It is a well-settled rule of construction of contracts that the entire contract including all its provisions must be construed together and when this is done, if its terms are clear and unequivocal, then it is the duty of the court to declare as a matter of law what the contract means and give it its proper construction; but if it is not clear, then oral testimony may be resorted to, to show the condition of the matter about

which the contract is made and if there has been a construction placed upon it by the parties themselves, that may be used to aid in determining what the parties really meant by the language used in the contract to be construed. In this case, it is shown that the rock was at the bottom of the ditch as it would be supposed to be in all ditches and it is apparent that neither the city nor the contractor expected that he would blast and excavate rock at the bottom of the ditch for a less price than he would throw out dirt near the top of the ditch which could be handled with a pick and shovel and could be excavated faster and cheaper than the rock at the bottom of the ditch could be excavated.

In view of this situation we are of the opinion that it was competent to show by oral testimony the practice in vogue in the city of Springfield to allow the $.25 per lineal foot for rock excavation in addition to the amount which would have been charged had the dirt extended to the bottom and as the evidence clearly shows that to have been the practice for years prior to the execution of this contract and the city engineer having recognized it and reported it in that way in his computation of the cost of the sewer, the trial court was entirely right in making the computation upon that basis. In making a contract of this character, both the city and the contractor ought to be careful to see that the contract should express in language too clear to be misunderstood exactly what the parties intend, but after the contract has been executed, the work honestly performed and the question arises in the court as to what compensation the contractor may recover, we must apply a reasonable and common sense rule to the construction of the contract with the end in view of trying to ascertain in a fair and just manner what the parties really meant when the contract was executed.

Some contention is made here also that even if the taxbills are held to be valid, the amount of recovery

should be materially reduced for the reason that fifteen per cent was allowed upon the face of the taxbills because the bills had not been paid within six months as provided by the statute. The judgment in this case does not provide the rate of interest which the judgment shall bear, hence the judgment will bear but six per cent from the date of its rendition and can only bear interest at that rate. Boonville ex rel. v. Stephens, 238 Mo. 339, 141 S. W. 1111. We think the trial court was right in computing interest at fifteen per cent to the date of the judgment and as the judgment itself will bear but six per cent from date of its rendition, no error was committed in that particular.

Judgment affirmed. *Gray, J.,* concurs; *Nixon, P. J.,* dissents.